UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| LINDA HARPER, et al., Plaintiffs, v. THOMAS TAVENNER, JR., Defendant. | ) | No. 2:24-cv-00094-JAW |

**ORDER ON DEFENDANT'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND MISCELLANEOUS RELIEF**

Following a five-day jury trial that concluded in a verdict for the plaintiff, the defendant filed two post-trial motions, one seeking to withdraw the parties' joint stipulation regarding the proper date for calculating prejudgment interest and the other seeking a vacatur of the lost wages portion of the loss of consortium award. Because the defendant has not shown that the circumstances warrant withdrawing the joint stipulation, the court denies his request to do so. Reviewing applicable state law, the court concludes the lost wages award was improper and vacates the jury's award for lost wages.

## I. BACKGROUND

On March 26, 2024, the Plaintiffs commenced this general maritime personal injury action, alleging that the Defendant's negligence caused his Sea Ray motorboat to collide with Plaintiff Linda Harper's Boston Whaler. *Compl.* (ECF No. 1); *Am. Comp.* (ECF No. 35). The parties litigated the case, and, on January 6, 2026, the matter was scheduled for a five-day jury trial beginning February 18, 2026. *Notice of Hr'g* (ECF No. 85). On February 12, 2026, in anticipation of trial, the parties filed

fourteen joint stipulations. *Joint Stipulations* (ECF No. 113). The parties' ninth stipulation (Joint Stipulation #9) provided:

> 9. **Notice of Claim.** Notice of claim relating to Plaintiffs' claims against Defendant arising out of the subject collision was served on Defendant via sheriff on March 15, 2023 (Plaintiffs' Exhibit 96).

*Id.* ¶ 9.

Meanwhile, on February 4, 2026, the parties each filed proposed jury instructions. *Def.'s Prop. Jury Instrs.* (ECF No. 104); *Pls.' Prop. Jury Instrs.* (ECF No. 105). The Plaintiffs' proposed jury instructions included damages claims for Mr. Harper's lost wages and loss of consortium. *Pls.' Prop. Jury Instrs.* No. 20 ¶¶ 5-6. On February 11, 2026, the Defendant objected to the Plaintiffs' proposed damages instruction for Mr. Harper's loss of consortium. *Def.'s Objs. to Pls.' Prop. Jury Instrs.* at 5 (ECF No. 109).

On February 20, 2026, the Court circulated an updated draft of jury instruction, including the following instruction regarding Mr. Harper's claim for lost wages and loss of consortium.

> You may also award Mr. Harper damages to compensate the lost wages he incurred and for any loss of consortium that he had enjoyed as part of his marriage that has been adversely affected by the accident, which includes a broad range of mutual benefits stemming from the marital relationship, including love, affection, care, attention, companionship, comfort, and protection.

On February 23, 2026, the Defendant objected to the loss of consortium damages instruction. *Def.'s Objs. to the Ct's Final Jury Instrs. With Other Edits/Suggestions.* (ECF No. 120). That same day, the Plaintiffs withdrew Mr. Harper's request for loss of consortium, limiting the proposed instruction to Mr.

Harper's lost wage claim, to which the Defendant had not objected. *Pls.' Objs. to Final Jury Instrs.* at 8 (ECF No. 121).

This matter came to trial before a jury on February 18-20 and 24-25, 2026. During the charge conference on February 24, 2026, counsel for the Plaintiffs confirmed their withdrawal of Mr. Harper's request for loss of consortium, thereby eliminating this claim from the final jury instruction and verdict form. Counsel for the Defendant, however, objected to Mr. Harper's lost wages claim, arguing Mr. Harper's lost wages were unavailable on the same grounds under which he could not receive loss of consortium. The Court could not reach a resolution during the charge conference and instructed the parties to conduct additional research and report back in the morning before the final day of trial.

On February 25, 2026, before convening trial, the Court addressed the Defendant's objection to including Mr. Harper's lost wages claim in the final jury instructions.

> So you got the jury instructions last night and they are in their final form. You'll note that I have included in the jury instructions a lost wage claim for Mr. Harper. We did a fair amount of research on it, and the answer is that I don't know the answer. I'm not sure whether or not he can claim it. I think he may not be able to claim it under maritime law, admiralty law. But he may be able to claim it under state law. And my thinking is that given the uncertainty, if I don't ask the question and it turns out he had a right to it, then we won't know the answer. But ordinarily, if I ask the question we get the answer and turns out he doesn't have a right to it. I can adjust the verdict. So I thought it was better to ask the question, get the answer, and resolve it, if necessary later.[1]

[1] The Court is quoting from an unpublished trial transcript.

The parties agreed with the Court's approach, and the Defendant restated his objection.

On February 25, 2026, the jury rendered a verdict for the Plaintiffs, apportioning 26% liability to Ms. Harper. *Jury Verdict Form* (ECF No. 123). The jury awarded the Plaintiffs $498,082.75 in damages, including $16,231.60 for Mr. Harper's lost wages. Accordingly, on February 27, 2026, the Clerk of Court entered judgment in favor of the Plaintiffs and against the Defendant in the amount of $368,581.24, plus interest as allowed by law.[2] *J.* (ECF No. 128).

On March 19, 2026, the Defendant filed two post-trial motions: one seeking permission to withdraw Joint Stipulation #9 and another seeking an order to vacate Mr. Harper's lost wages award. *Def.'s Mot. for J. as a Matter of Law or in the Alternative Mot. to Alter or Am. J.* (ECF No. 129) (*Def.'s Damages Mot.*); *Def.'s Mot. for Misc. Relief* (ECF No. 130) (*Def.'s Stipulation Mot.*). On April 9, 2026, the Plaintiffs filed their responses, opposing the Defendant's motions. *Pls.' Opp'n to Def.'s Mot. for Misc. Relief Regarding Pre-J. Interest* (ECF No. 134) (*Pls.' Stipulation Opp'n*); *Pls.' Opp'n to Def.'s Mot. for J. as a Matter of Law or Mot. to Alter/Am. J.* (ECF No. 135) (*Pls.' Damages Opp'n*). On April 23, 2026, the Defendant filed his replies. *Def.'s Reply in Supp. of his Mot. for Misc. Relief* (ECF No. 136) (*Def.'s Stipulation Reply*);

[2] On the second day of trial, February 19, 2026, the parties agreed to waive their right to have the jury determine the applicable prejudgment interest rate. Instead, the parties elected to have the Court determine the applicable prejudgment interest rate. The Court revised the jury instructions accordingly, and any question of fact regarding prejudgment interest was not submitted to the jury during its deliberations.

*Def.'s Reply in Support of His Mot. for J. as a Matter of Law* (ECF No. 137) (*Def.'s Damages Reply*).

## II. THE DEFENDANT'S MOTION ON PREJUDGMENT INTEREST

### A. The Parties' Positions

#### 1. The Defendant's Motion for Miscellaneous Relief

In his post-trial motion for miscellaneous relief, the Defendant asks the Court's permission to withdraw Joint Stipulation #9 and for the Court to declare that prejudgment interest began to run on October 18, 2022, not March 15, 2023 as stipulated. According to the Defendant, because of a mutual mistake, good cause exists to withdraw Joint Stipulation #9. *Def.'s Stipulation Mot.* at 2-3. Pointing to an October 2022 email exchange between the Defendant and the Plaintiffs' counsel—before the Defendant obtaining his own counsel—the Defendant received actual written notice of the Plaintiffs' claims by email on October 18, 2022. *Id.* at 3; *id.*, Attach. 1, *Email Exchanges and NOC*. The Defendant argues that the email, along with his "coordinated pre-suit activity," including retaining counsel, engaging experts, and preparing for the vessel inspection in months between October 2022 and March 2023, demonstrate that October 18, 2022 is the operative notice date and Joint Stipulation #9 "inaccurately reflects the timeline of notice." *Def.'s Stipulation Mot.* at 4.

According to the Defendant, there is good cause to correct the mutual mistake in Joint Stipulation #9 and withdrawing the stipulation would not prejudice the Plaintiffs. *Id.* By contrast, enforcing Joint Stipulation #9 would prejudice the

Defendant because the applicable interest rate for March 2023 is significantly higher than the applicable rate for October 2022. *Id.* at 5. According to the Defendant, the much higher interest rate "is not attributable to any delay" on his part "but rather to Plaintiffs' attempt to rely on a later formal service date despite earlier actual requested and confirmed notice as of October 18, 2022." *Id.*

The Defendant also argues that allowing the Plaintiffs to benefit from the March 2023 notice date would create perverse incentives for a claimant to "provide early written notice sufficient to trigger actual litigation activity, then delay formal service in order to potentially capture a more favorable interest rate." *Id.* "Such a practice," the Defendant explains, "would undermine the purpose of [14 M.R.S.] § 1602-B and distort the settlement incentives the statute is designed to promote," and defies the purpose of service of process as "a procedural mechanism meant to protect the defendant in litigation, not provide plaintiffs with a procedural advantage." *Id.* at 5-6. Failing to withdraw Joint Stipulation #9 therefore "would materially prejudice" the Defendant. *Id.* at 6.

Thus, to "correct a clear mistake, align the record with the undisputed facts, and promote the interests of justice," and because withdrawal would not prejudice the Plaintiffs but failing to do so would prejudice the Defendant, the Defendant asks this Court to allow the parties to withdraw Joint Stipulation #9 and declare that October 18, 2022 is the operative date for calculating prejudgment interest. *Id.* at 6.

### 2. The Plaintiffs' Opposition

The Plaintiffs oppose the Defendant's motion on several grounds. First, they argue that the Defendant cannot now dispute and seek to withdraw a fact to which he already stipulated after the jury imposed an adverse judgment against him. *Pls.' Stipulation Opp'n* at 2-3. Second, the Plaintiffs argue there is no good cause to withdraw Joint Stipulation #9, insisting there was no mutual mistake. *Id.* at 3-5. Pointing to the relevant statute, the Plaintiffs contend proper service was not accomplished until March 15, 2023. *Id.* at 4-5. Even if there was a mistake, the Plaintiffs argue that the Defendant "had ample time to rectify or otherwise address it" before the close of trial. *Id.* at 5. According to the Plaintiffs calculating prejudgment interest from October 2022 as requested by the Defendant would be inconsistent with the facts and the parties' joint stipulation, and would be "clearly inconsistent with the purposes of prejudgment interest and Section 1602-B." *Id.* at 5-7. Third, the Plaintiffs argue withdrawing Joint Stipulation #9 would prejudice them, as "the injured party and the prevailing party at trial." *Id.* at 5-7 (emphasis omitted). As the Plaintiffs see it, the Defendant simply seeks to avoid a prejudgment interest calculation he "would prefer not to pay," and withdrawing Joint Stipulation #9 and applying the Defendant's proposed calculation at a much lower interest rate would "create a windfall" for the Defendant. *Id.* at 6-7. The Plaintiffs therefore ask the Court to deny the Defendant's motion and to calculate prejudgment interest consistent with Joint Stipulation #9. *Id.*

#### 3. The Defendant's Reply

In reply, the Defendant argues that his conduct after receiving the notice of claim in October 2022 demonstrates he received actual notice and waived formal service. *Def.'s Stipulation Reply* at 1-2. The Defendant reiterates his argument that there is good cause to withdraw Joint Stipulation #9 and that its withdrawal would not prejudice the Plaintiffs but would prevent prejudice to himself. *Id.* at 2-5.

### B. LEGAL STANDARD

"Stipulations in litigation are favored because they tend to expedite trial proceedings, eliminate the need for proving essentially uncontested facts, and husband scarce judicial resources." *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 120-21 (1st Cir. 2003) (citing *TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995) (Stipulations are best "understood as the analogue of terms binding parties to a contract"). "Once a party has entered into a stipulation, however, that party is not at liberty to renege unilaterally on a stipulated fact without leave of court, which ordinarily will not be granted absent a showing of good cause." *Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 6 (1st Cir. 2007) (citing caselaw). "[G]ood cause" to withdraw a stipulation "means, in a nutshell, that good reason must exist and that relief must not unfairly prejudice the opposing party or the interests of justice." *Am. Honda Motor Co. v. Richard Lundgren, Inc.*, 314 F.3d 17, 21 (1st Cir. 2002) (internal quotation marks and citation omitted) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001); *FDIC v. Kooyomjian*, 220 F.3d 10, 14 (1st Cir. 2000)).

## C. DISCUSSION

Like any litigant, the Defendant "has a duty to satisfy himself concerning the matters which his opponent proposes for stipulation." *Alper Auto., Inc. v. Day To Day Imports, Inc.*, No. 21-14236, 2022 U.S. App. LEXIS 22808, at *9 (11th Cir. 2022) (citation omitted). "Decisions about what evidence to offer at trial are entirely within the parties' control," including "decisions about whether to stipulate to facts." *Forcier v. Metro. Life Ins. Co.*, 469 F.3d 178, 186 (1st Cir. 2006). Absent "fraud, misrepresentation, manifest injustice, or other exceptional circumstances . . . a party who agrees to submit a case on a particular set of stipulated facts cannot later be heard to complain that [he] misjudged what evidence might be beneficial to [his] cause." *Id.*

Here, the Defendant has not shown that the circumstances warrant withdrawing Joint Stipulation #9. The Defendant does not point to any information previously unavailable to the parties or any incident preventing him or the Plaintiffs from making an informed decision before agreeing to Joint Stipulation #9. Moreover, the record shows the Defendant had ample opportunity to determine the date he received the notice of claim before agreeing to Joint Stipulation #9. Yet his briefing fails to explain his delay and lack of diligence. *See Barton v. Delfgauw*, No. 3:21-cv-05610-DGE, 2025 U.S. Dist. LEXIS 46107, at *10 (W.D. Wash. Mar. 13, 2025) ("The Court will not allow Defendants to simply disregard their own unambiguous stipulation by arguing they should be relieved of the consequences of their stipulation because they failed to diligently review it").

Furthermore, a dispute over the proper date of service is not the kind of clear mistake that compels the Court to relieve the parties of a joint stipulation. Although First Circuit caselaw holds that a stipulation based on "'a clear mistake'" may be "'good reason' for setting aside [that] stipulation," *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 32 (1st Cir. 2007) (quoting *TI Fed. Credit Union*, 72 F.3d at 928), there is an important difference between "withdraw[ing] a clearly erroneous stipulation to make room for the indisputable truth" and "withdraw[ing] a stipulation so that the parties can argue a point in contention." *See Santa Fe Cmty. Coll. v. Ztark Broadband, LLC*, Civ. No. 20-1151 SCY/KK, 2023 U.S. Dist. LEXIS 21978, at *18 (D.N.M. Feb. 9, 2023); *see also Pls.' Stipulation Opp'n* at 3-7 (arguing under Maine law that the Defendant was not properly served until March 15, 2023). Moreover, any harm resulting from the difference in applicable interest rates is a consequence of the Defendant's own failure to thoroughly investigate the applicable prejudgment interest rates for October 2022 and March 2023, both of which were readily available to him before he agreed to Joint Stipulation #9 in February 2026.

The Court concludes that the Defendant has failed to demonstrate good cause to withdraw Joint Stipulation #9 and rules that prejudgment interest will be assessed consistent with the parties' February 12, 2026 Joint Stipulation #9.

## III. THE DEFENDANT'S MOTION ON THE DAMAGES AWARD FOR LOST WAGES

### A. The Parties' Positions

#### 1. The Defendant's Motion Exclude the Lost Wages Award

The Defendant contends Mr. Harper cannot recover his lost wages for the time he spent away from work to care for the personal injuries Ms. Harper sustained from the collision. *Def.'s Damages Mot.* at 2-6. The Defendant argues Mr. Harper is not entitled to recover those damages under general maritime law or Maine law. *Id.* at 3-5. He therefore asks this Court to vacate the jury's award for $16,231.60 in lost wages to Mr. Harper. *Id.* at 6.

The Defendant moves for this exclusion on two procedural grounds. First, as a motion for judgment as a matter of law, claiming that the motion was properly preserved and renewed under applicable law. *Id.* at 2. Alternatively, the Defendant seeks an amended judgment, arguing that the damages award was clear legal error and amending the judgment would not undermine the jury's fact-finding role or the Plaintiffs' Seventh Amendment rights. *Id.* at 2-3, 5-6.

**2. The Plaintiffs' Opposition**

The Plaintiffs oppose the Defendant's motion on procedural and substantive grounds. First, the Plaintiffs argue the Defendant's challenge fails procedurally because the Defendant did not preserve his challenge with a proper motion for judgment as a matter of law before the case was submitted to the jury. *Pls.' Damages Opp'n* at 5. Second, the Plaintiffs argue that consortium claims are permitted under general maritime law. *Id.* at 7. Third, the Plaintiffs argue that, because Ms. Harper's injuries occurred in state waters, the law permits Mr. Harper to recover loss of consortium under applicable state law remedies. *Id.* at 5-9. For these reasons, the Plaintiffs urge the Court to deny the Defendant's alternative request to amend

judgment, arguing that Mr. Harper's loss of consortium award is not a manifest error of law. *Id.* at 10.

### 3. The Defendant's Reply

In reply, the Defendant maintains that he properly preserved his challenge to Mr. Harper's lost wages claim. *Def.'s Damages Reply* at 1-2. The Defendant also disputes the Plaintiffs' reading of the relevant caselaw, arguing that Mr. Harper cannot recover lost wages under general maritime law or state law. *Id.* at 2-4.

## B. Legal Standard

### 1. Federal Rule of Civil Procedure 50

"The Federal Rules of Civil Procedure provide a clear, two-step process for a party who believes that the evidence presented at trial in a civil action is legally insufficient to support a jury verdict." *Menninger v. PPD Dev., L.P.*, 145 F.4th 126, 133 (1st Cir. 2025). "First, the party must move for judgment as a matter of law under Rule 50(a), which it may do 'at any time before the case is submitted to the jury.'" *Id.* (quoting FED. R. CIV. P. 50(a)). To do so, the party "must specify the judgment sought," as well as "the law and facts that entitle [it] to the judgment." FED. R. CIV. P. 50(a). Second, if the Court denies the motion, under Rule 50(b), the party may renew its motion within twenty-eight days after the entry of judgment. FED R. CIV. P. 50(b). "Because the Rule 50(b) motion is only a renewal of the preverdict [Rule 50(a)] motion, it can be granted only on grounds advanced in the preverdict motion." FED. R. CIV. P. 50 advisory committee's note to 2006 amendment; *see also Zachar v. Lee*, 363 F.3d 70, 73 (1st Cir. 2004) ("[A] motion for judgment as a matter of law at

the close of the evidence 'preserves for review only those grounds specified at the time, and no others'") (quoting *Correa v. Hosp. S.F.*, 69 F.3d 1184, 1196 (1st Cir. 1995)).

### 2. Federal Rule of Civil Procedure 59

Under Rule 59(e), a party may file a motion to alter or amend judgment within twenty-eight days after entry of judgment. FED. R. CIV. P. 58(e). Rule 59(e) motions are intended to provide relief where the "judgment evidence[s] a manifest error of law." *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014) (quoting *Glob. Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 25 (1st Cir. 2007)). "Rule 59(e) relief is granted sparingly." *Id.*

## C. Discussion

### 1. The Plaintiffs' Procedural Challenge

The Court is unpersuaded by the Plaintiffs' procedural argument. Reviewing the record, the Court concludes the Defendant preserved his argument. Before the case was submitted to the jury, the Defendant specifically addressed the issue of Mr. Harper's lost wage claim.

> **THE COURT:** Loss of consortium. I've eliminated any claim other than the lost wage claim in accordance with the plaintiff's concession. The question I had for the defendants and for that matter of plaintiffs, you cited the plaintiff's cited some authority to the effect that loss of consortium does not apply to in admiralty law, and you cited some cases to that effect. Is it your contention that Mr. Harper will not be allowed under that rule obtain lost wages as well?
>
> **MS. SZCZEPANIAK**: Thank you, Your Honor. Yes, I think that would be our position is that [lost wages] falls within the loss of consortium [claim] because otherwise I don't know that there is an independent basis of law for Anthony Harper to claim damages under –
>
> **THE COURT**: Okay. Well I don't know. I'm going to give the Plaintiff an opportunity to present me with whatever information you have

> before we finalize these instructions that would allow me to conclude that a lost wage claim is appropriate for the spouse.
>
> **MR. KOERTING**: Your Honor, we believe a loss of consortium claim is very plainly allowed under general maritime law. To the extent that the loss of consortium claim is needed to pursue [Mr. Harper's] lost wages . . . then we would maintain the loss of consortium. What we're withdrawing is the request for relief for . . . affect[ing] on the marriage and sexual relationship.

Ultimately, the Court withheld resolution until the Court and parties had additional time to research the matter.

The following day, the Court denied the Defendant's request but acknowledged that the Defendant may file a renewed motion after trial.

> So you got the jury instructions last night and they are in their final form. You'll note that I have included in the jury instructions a lost wage claim for Mr. Harper. We did a fair amount of research on it, and the answer is that I don't know the answer. I'm not sure whether or not [Mr. Harper] can claim it. I think he may not be able to claim it under maritime law, admiralty law. But he may be able to claim it under state law. And my thinking is that given the uncertainty, if I don't ask the question and it turns out he had a right to it, then we won't know the answer. But ordinarily, if I ask the question we get the answer and turns out he doesn't have a right to it. I can adjust the verdict. So I thought it was better to ask the question, get the answer, and resolve it, if necessary later.

The Court is therefore unpersuaded by the Plaintiffs' argument that the Defendant did not preserve his challenge to Mr. Harper's lost wages claim. Over multiple days, the Court consulted with counsel to determine whether Mr. Harper had a basis in either admiralty law or state law to recover his lost wages while caring for Ms. Harper. Neither the parties nor the Court could arrive at a definitive answer within the time pressures of trial. After the Defendant moved to exclude that damages claim from the jury's consideration, the Court denied the motion because it

was unclear whether Mr. Harper was entitled to his lost wages and at that stage of trial the Court found it preferable to err on the side of including the instruction and allowing the jury to decide the issue.[3]

### 2. Mr. Harper's Lost Wages Award

The Defendant argues that Mr. Harper is not entitled to recover his lost wages under general maritime law or Maine law. The Plaintiffs argue that Mr. Harper can recover loss of consortium under general maritime law, and in any event, because general maritime law does not displace his right under Maine law and because Maine law provides Mr. Harper a remedy for loss of consortium, the jury's award for Mr. Harper's lost wages was appropriate under the law. *Pls.' Damages Opp'n* at 7-10.

#### a. Applicable Law

In the First Circuit, "admiralty plaintiffs are not restricted to maritime relief and may pursue 'civil remedies provided by state law, so long as they do not conflict with the national substantive maritime law.'" *McKeown v. Woods Hole*, 9 F. Supp. 2d 32, 42 (D. Mass. 1998) (quoting *Ellenwood v. Exxon Shipping Co.*, 984 F.2d 1270, 1279 (1st Cir. 1993). More specifically, "'the extent to which the state law may be used to remedy maritime injuries is constrained by a so-called "reverse–*Erie*" doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards.'" *Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 626 (1st Cir. 1994) (citations omitted).

---

[3] Under Rule 51, the Court may review the lost wages instruction for plain error. *United States v. Abbas*, 100 F.4th 267, 292-93 (1st Cir. 2024); *Davignon v. Clemmey*, 322 F.3d 1, 9 (1st Cir. 2003) (stating that a jury instruction is erroneous if it is incorrect as a matter of law).

As the Supreme Court recently explained,

> [F]ederal courts follow previously "established" maritime rules. No bright line exists for determining when a federal maritime rule is "established," but a body of judicial decisions can suffice. In the absence of an established rule, federal courts may create uniform maritime rules. When no established rule exists, and when the federal courts decline to create a new rule, federal courts apply state law. For purposes of this general overview, we will stop there, as the "issue of federalism in admiralty and the scope of application of state law in maritime cases is one of the most perplexing issues in the law."

*Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 70 (2024) (internal citations and quotations omitted).

Accordingly, the exercise of admiralty jurisdiction "does not result in automatic displacement of state law." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 206 (1996) (citation omitted); *see also Exxon v. Sofec, Inc.*, 517 U.S. 830, 839 (1996) (explaining that because negligence claims are generally based upon state law, "courts sitting in admiralty may draw guidance from, inter alia, the extensive body of state law applying proximate causation requirements and from treaties and other scholarly sources"). Rather, a court sitting in admiralty jurisdiction "may—and should—resort to state law when no federal rule covers a particular situation." *See Greenly v. Mariner Mgmt. Group, Inc.*, 192 F.3d 22, 26 (1st Cir. 1999) (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 320-21 (1955)); *Goodloe v. Royal Caribbean Cruises, Ltd.*, 1 F.4th 1289 (11th Cir. 2021); *Barnett v. United States*, 650 F. Supp. 3d 412 (D.S.C. 2023).

**b. Loss of Consortium Under General Maritime Law**

The parties first dispute whether general maritime law permits Mr. Harper to recover for loss of consortium. The Defendant maintains that loss of consortium is

usually unavailable to spouses of injured seamen and to non-seafarers under general maritime law. *Def.'s Damages Mot.* at 5 n.2. In support, the Defendant relies on *Doyle v. Graske*, 579 F.3d 898, 906 (8th Cir. 2009), which denied loss of consortium damages to the spouse of an injured non-seafarer, as well as *Horsley v. Mobil Oil Corp.*, 15 F.3d 200, 201-03 (1st Cir. 1994), *Murray v. Anthony J. Bertucci Construction Co.*, 958 F.2d 127, 130-32 (5th Cir. 1992), and *Smith v. Trinidad Corp.*, No. 91-56571, 1993 U.S. App. LEXIS 10474, at *1-2 (9th Cir. May 4, 1993), each of which rejected loss of consortium claims brought by spouses of injured seamen. *Id.*

The Plaintiffs disagree, relying on *Carollo v. Global Associates, Inc.*, 627 F. Supp. 1507, 1513 (D. Mass. 1986) for the proposition that spouses may recover loss of consortium under general maritime law. *Pls.' Damages Opp'n* at 7. In reply, the Defendant argues that *Carollo* was overruled by *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990). *Def.'s Damages Reply* at 3-4. The Defendant further argues that, even if *Carollo* remains good law, it is distinguishable because it involved the spouse of a Jones Act seaman, whereas Ms. Harper is a non-seafarer. *Id.* at 4.

The Court agrees with the Defendant that *Carollo* does not support the Plaintiffs' position. In *Carollo*, the district court ruled that the spouse of a seaman injured while employed as a crewman on a vessel in the high seas "may state a claim for loss of society and loss of services . . . [and] loss of consortium." *Carollo*, 627 F. Supp. at 1513. The district court decided *Carollo* in 1986 without the benefit of *Miles*. Four years later, in 1990, the Supreme Court issued *Miles*. In *Miles*, reasoning that it "would be inconsistent with [the Supreme Court's] place in the constitutional

scheme were [it] to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence," the Supreme Court held that "there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman." *Miles*, 498 U.S. at 32-33. Because the Jones Act limited recovery for a seaman's wrongful death to pecuniary losses, the Supreme Court declined to permit a more expansive recovery for loss of society through a parallel general maritime claim. *Id.*

The First Circuit subsequently applied *Miles* in the context of a nonfatal injury to a seaman and held that damages for loss of spousal society were unavailable under general maritime law. *Horsley*, 15 F.3d at 201-203; *see also Horsley v. Mobil Oil Corp.*, 825 F. Supp. 424, 426 (D. Mass. 1993) (concluding that pre-*Miles* cases "like *Carollo*" were "impliedly if not expressly overruled by *Miles*), *aff'd*, 15 F.3d 200 (1st Cir. 1994)). The Eighth Circuit has extended the same rule to the spouse of an injured non-seafarer. *Doyle,* 579 F.3d at 906.

Based on *Miles* and subsequent caselaw, the Court concludes that *Carollo* does not provide a basis for Mr. Harper to recover loss of consortium damages under general maritime law and the emerging rule is that a spouse does not have a right to loss of consortium and loss of society damages under general maritime law.

**c. Availability of State-Law Remedies**

The conclusion that general maritime law does not itself provide Mr. Harper a loss of consortium remedy does not end the inquiry. The Plaintiffs alternatively contend that Maine law supplies such a remedy and that general maritime law does

not displace it. *Pls.' Damages Opp'n* at 7-10. The Court agrees with this point. There is not an "established" federal maritime rule against the spouse of a non-seafarer injured in United States territorial waters from recovering damages for personal injuries under state law. Rather, the Court identified multiple cases supporting the Plaintiffs' position that state law remedies, such as loss of consortium, are available under those circumstances. *See, e.g.*, *Calhoun*, 516 U.S. at 206 (limiting the applicability of state law to personal injuries occurring in territorial waters); *see also Van Horn v. Chubb Ins. Co.*, No. 17-12969 Section "R" (3), 2018 U.S. Dist. LEXIS 56587, at *5-6 (E.D. La. Apr. 3, 2018) ("[T]he Court perceives no basis to find a conflict between maritime law and state remedies for personal injuries within territorial waters") (citation omitted); *Felarise v. Cheramie Marine, L.L.C.*, No: 09-6355 Section: "S" (3), 2010 U.S. Dist. LEXIS 6021, at *3-7 (E.D. La. Jan. 26, 2010) (relying on *Calhoun* to allow recovery under state law of non-pecuniary damages for a personal injury to a non-seafarer in territorial waters); *cf. Santos v. America Cruise Ferries, Inc.*, 100. F. Supp. 3d 96, 103-112 (D.P.R. 2015) (refusing to extend similar claims to injuries on the high seas).

**d. Maine Law**

Accordingly, the Court turns to Maine law. The parties do not dispute that Ms. Harper was injured in the territorial waters or Maine. Nor do they dispute that Maine law permits the spouse of an injured person to recover damages for loss of consortium. However, the parties do dispute whether Mr. Harper may recover his lost wages during the time he spent caring for Ms. Harper.

Under Maine law, the spouse of an injured person may recover for loss of consortium. 14 M.R.S. § 302. "For example, if the party who is the direct victim of tortious conduct is married and the spouse suffers a loss of consortium resulting from the direct victim's injuries, the spouse may recover for damage to the interest the spouse has in the company, society, cooperation, affection, and aid that characterize a marriage." *Smith v. Henson*, 2025 ME 55, ¶ 38, 339 A.3d 816 (quotation omitted). Additionally, the spouse "is entitled to the fair value of services which he or she has performed as a nurse in caring for the injured spouse." *Britton v. Dube*, 154 Me. 319, 324, 147 A.2d 452 (1958).

However, the spouse may not recover their lost wages while caring for their injured spouse. *Id.* (A husband that performed six weeks of care to his injured wife "cannot recover his loss of wages . . . but is entitled to the fair value of his work as a nurse or in caring for his wife"). Therefore, under Maine law, Mr. Harper may recover damages for loss of consortium and for the fair value of rendered nursing services, but not for his lost wages while caring for Ms. Harper. *See Poirier v. United States*, 745 F. Supp. 23, 32 (D. Me. 1990) (awarding spouse the value of her nursing services, not lost wages); *Langille v. McLane Foodservice, Inc.*, 12-CV-189-J, 2013 U.S. Dist. LEXIS 188155, at *18-19 (D. Wyo. 2013) ("A majority of the courts, both state and federal, have determined the proper value of services rendered by a spouse providing nursing care for an injured spouse is the cost of hiring an outside party to provide the care, not lost wages") (citing cases).

As explained, the Plaintiffs waived their damages claim for loss of consortium, except for Mr. Harper's lost wages. Consequently, Mr. Harper received a damages award for loss of consortium specifically precluded by Maine law. Had the Plaintiffs provided evidence of the fair value of Mr. Harper's service, the jury's award would be permitted under Maine law, but that evidence was not introduced at trial. Indeed, under Maine law, a spousal plaintiff is not required to introduce specific evidence about "the reasonable value of those services," and a jury "could properly consider the nature of the services and draw on their own judgment and experience in determining their reasonable value." *Roberts v. Tardif*, 417 A.2d 444, 452 (Me. 1980). But Mr. Harper did not argue for the reasonable value of his services; he limited his claim for damages to his lost wages, a claim Maine law disallows.

The Court therefore concludes that the jury's award for Mr. Harper's lost wages in the amount of $16,231.60 was legal error and therefore GRANTS the Defendant's motion for judgment as a matter of law or in the alternative to amend judgment.

## IV. CONCLUSION

The Court DENIES the Defendant's Motion for Miscellaneous Relief (ECF No. 130). Prejudgment interest is to be assessed consistent with the parties' February 12, 2026 Joint Stipulation #9.

The Court GRANTS the Defendant's Motion for Judgment as a Matter of Law or in the Alternative Motion to Alter or Amend Judgment (ECF No 129) and ORDERS the Clerk's Office to issue an amended judgment in favor of Linda Harper only against

Thomas Tavenner, Jr. in the total amount of $356,569.85 and in favor of Thomas Tavenner, Jr. against Anthony Harper.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of September, 2026